**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK**

**UNITED STATES OF AMERICA**          **Criminal No.  3:17-CR-63 (TJM)**

     **v.**

**JESSICA CRANDALL,**

     **Defendant.**

---

## GOVERNMENT'S SECOND TRIAL MEMORANDUM

The United States of America, by Assistant United States Attorney Miroslav Lovric for the Northern District of New York, files this Second Trial Memorandum in furtherance of the upcoming trial of defendant Jessica Crandall.

**Defendant Jessica Crandall's Liability As To Substantive Offenses/Counts 2, 3, 4, & 6 In The Indictment May Be Found  Pursuant To Any One Of Three Legal Principles**

Jessica Crandall has pleaded guilty to counts 1 & 5 of the indictment and at the time of her plea she declined to enter into a plea agreement.  She is therefore proceeding to trial on counts 2, 3, 4, & 6 of the indictment, in addition to the forfeiture allegation.  Defendant Jessica Crandall has pled guilty to count 1.  Count 1 charges Jessica Crandall and Justin Crandall with having engaged in a conspiracy from in or about November of 2016 through on or about February 13, 2017 whereby they conspired with each other to use V-1, a minor born in 2015, to engage in sexually explicit conduct for the purpose of producing one or more visual depictions. Thus, Jessica Crandall has already admitted that she and Justin Crandall conspired to commit numerous substantive offenses of sexually exploiting minor V-1.  Additionally, she has also pled guilty to count 5 which is just one of the several substantive offenses that was committed in

1

furtherance of the conspiracy.  Defendant Jessica Crandall, who is indicted in a case charging just such a conspiracy, may be liable for each of the substantive counts/offenses as charged in the indictment under any one of the following three separate theories:

1. Actual commission of the crime; or

2. Participation in the crime as an aider or abettor; or

3. Liability under a Pinkerton theory.

Thus, Jessica Crandall may be found guilty of counts 2, 3, 4, or 6 (the substantive offenses) under any one or more of these legal theories.

Actual Commission Of Substantive Offense

Jessica Crandall can be convicted of counts 2, 3, 4, and 6 by actually committing the offense by committing the following elements of the offense:

1)      First, the victim was less than 18 years old;

2)      Second, the defendant used the minor to take part in sexually explicit conduct for the purpose of producing a visual depiction of that conduct; and

3)      Third, the visual depiction was actually transported or transmitted in or affecting interstate commerce, or the defendant knew or had reason to know that the visual depiction would be transported or transmitted in or affecting interstate commerce, or the visual depiction was produced using materials that had been mailed, shipped, or transported in or affecting interstate commerce.

An Aider Or Abettor In Commission Of Substantive Offense

Jessica Crandall can be convicted of counts 2, 3, 4, and 6 by aiding or abetting another in the commission of said offenses.  In this case, she can be convicted of committing these substantive offenses if she aided or abetted Justin Crandall in the commission of these offenses. The indictment charges Jessica Crandall and Justin Crandall with having committed substantive counts 2-6 under an aiding and abetting theory.  See indictment.

Aiding or abetting a crime occurs when one who "associate[s] himself with the venture ... participate[s] in it as something that he wishes to bring about ... [and] seek[s] by his action to make it succeed." United States v. Peoni, 100 F.2d 401, 402 (2d Cir. 1938). See also 18 U.S.C. § 2.  A jury finding that one is guilty of aiding and abetting a crime is not the equivalent of a finding of a conspiratorial agreement.  United States v. Palozzale, 71 F.3d 1233, 1237 (6th Cir. 1995).  There is no requirement that there be an agreement in order to convict one of aiding and abetting.  United States v. Frazier, 880 F.2d 878, 886 (6th Cir. 1989), cert. denied, 493 U.S. 1053, 110 S.Ct. 1142, 107 L.Ed.2d 1046 (1990).  Conspiracy to commit a crime and aiding and abetting in the commission are distinct offenses. Id.  See also United States v. Superior Growers Supply, 982 F.2d 173, 178 (6th Cir. 1992).  Criminal defendants need not assist in every element to be guilty on an aid and abet theory.  Any aid is enough.  However, "an aiding and abetting conviction requires not just an act facilitating one or another element, but also a state of mind extending to the entire crime."  United States v. Rosemond, 134 S.Ct. 1240, 1248 (2014). "[A] person who actively participates in a criminal scheme knowing its extent and character intends that scheme's commission." Id. at 1249.

Jessica Crandall aided and abetted Justin Crandall in the commission of the substantive offenses charged in counts 2, 3, 4, and 6.

Pinkerton/Conspiratorial Liability For A Substantive Offense

Jessica Crandall can be convicted of counts 2, 3, 4, and 6 pursuant to

Pinkerton/Conspiratorial liability.  Under the doctrine of <u>Pinkerton v. United States</u>, 328 U.S.

640 (1946), the criminal act of one co-conspirator, if it was committed within the scope of and in

furtherance of the conspiracy, can be attributed to another co-conspirator for the purpose of

holding the latter responsible for the substantive offense, provided that the criminal act was

reasonably foreseeable as a necessary or natural consequence of the conspiracy. <u>Id</u>. at 647-48;

<u>United States v. Lopez</u>, 271 F.3d 472, 480 (3d Cir. 2001).  The concept that a co-conspirator may

be criminally liable for the substantive acts of his co-conspirators is commonly referred to as the

Pinkerton theory of liability, the Pinkerton doctrine, or co-conspirator liability. See <u>id</u>.  Pinkerton

does not concern liability for conspiracy; it imposes liability upon co-conspirators for substantive

offenses based upon their affiliation with the conspiracy.  See <u>United States v. Alvarado-Casas</u>,

715 F.3d 945, 951 n.6 (5th Cir. 2013).

Like aiding and abetting, see 18 U.S.C. § 2, the Pinkerton doctrine is a theory of liability,

not a separate crime.  Accordingly, like aiding and abetting, the government is not required to

give notice prior to trial of an intent to prove a substantive crime through a Pinkerton theory of

liability.  <u>United States v. Jimenez</u>, 509 F.3d 682, 692 (5th Cir. 2007).  In contrast to aiding and

abetting, however, Pinkerton liability—both its existence and its limitations—does not arise from

any statute but is solely a creature of the common law.  <u>United States v. Thirion</u>, 813 F.2d 146,

151 (8th Cir. 1987).

In <u>Pinkerton v. United States,</u> 328 U.S. 640 (1946), two brothers, Walter and Daniel

Pinkerton, were indicted for violations of the Internal Revenue Code involving evasion of liquor

taxes.  The indictment included a conspiracy count and ten substantive counts.  The jury found

both brothers guilty of the conspiracy count, Walter guilty of nine of the substantive counts, and Daniel guilty of six of the substantive counts. Id. at 641.  The Court of Appeals for the Fifth Circuit affirmed, 151 F.2d 499 (5th Cir. 1945), and the Supreme Court granted a writ of certiorari to resolve a conflict in the circuits.  Each of the substantive offenses was committed "pursuant to the conspiracy," 328 U.S. at 642, and the petitioners argued that the substantive counts therefore merged into the conspiracy count. Id.  Justice Douglas, writing for the Court, rejected that argument, observing that "[i]t has been long and consistently recognized by the Court that the commission of the substantive offense and a conspiracy to commit it are separate and distinct offenses." Id. at 643.  Furthermore, "it is not material that overt acts charged in the conspiracy counts were also charged and proved as substantive offenses." Id. at 644.  Next, the Court observed that there was enough evidence for the jury to find that Daniel Pinkerton had joined the conspiracy. Id. at 645.  Then the Court reached the issue that has made Pinkerton one of the best-known cases in the field of criminal law, setting it up as follows:

There is ... no evidence to show that Daniel participated directly in the commission of the substantive offenses on which his conviction has been sustained, although there was evidence to show that these substantive offenses were in fact committed by Walter in furtherance of the unlawful agreement or conspiracy existing between the brothers.  The question was submitted to the jury on the theory that each petitioner could be found guilty of the substantive offenses, if it was found at the time those offenses were committed petitioners were parties to an unlawful conspiracy and the substantive offenses charged were in fact committed in furtherance of it. Id. (footnotes omitted).

In concluding that Daniel could indeed be convicted of substantive offenses his brother had committed in furtherance of the conspiracy between them (some of which were committed

when Daniel was actually in prison), the Court observed that "so long as the partnership in crime continues, the partners act for each other in carrying it forward." Id. at 646.  In other words, for Pinkerton liability for substantive offenses to apply, the substantive offense must have been committed by a co-conspirator in furtherance of the conspiracy and within the scope of the unlawful project, and must have been reasonably foreseeable "as a necessary or natural consequence of the unlawful agreement." Id. at 648.

In order for a defendant to be held liable for a substantive offense pursuant to Pinkerton liability, the following must be found:

1) A conspiracy in violation of federal law was in existence, and the defendant was a member of that conspiracy.

2) A substantive offense was committed by a conspirator during the existence of the conspiracy and in furtherance of its objects.

3) The defendant was a knowing and willful member of the conspiracy at the time of the commission of the substantive offense.

4) The commission of the substantive offense by a co-conspirator was a reasonably foreseeable consequence of the conspiracy.

The courts agree that there is no requirement that the underlying conspiracy be charged. But in the Jessica Crandall and Justin Crandall indictment the conspiracy is actually charged in count 1 of the indictment; and Jessica Crandall has admitted her participation in this conspiracy when she pleaded guilty to count 1 of the indictment.  At least eight courts of appeals have held that the underlying conspiracy need not be charged for a jury to find Pinkerton liability. United States v. Edmond, 815 F.3d 1032, 1047 (6th Cir. 2016); United States v. Newman, 755 F.3d 543, 545 (7th Cir. 2014); United States v. Vázquez-Castro, 640 F.3d 19, 24 (1st Cir. 2011); United

States v. Ashley, 606 F.3d 135, 143 (4th Cir. 2010); United States v. Budd, 496 F.3d 517, 527-28 (6th Cir. 2007); United States v. Zackery, 494 F.3d 644, 647 (8th Cir. 2007); United States v. Lopez, 271 F.3d 472, 480-81 (3d Cir. 2001); United States v. Chairez, 33 F.3d 823, 827 (7th Cir. 1994); United States v. Macey, 8 F.3d 462, 468 (7th Cir.1993); United States v. Sanchez, 917 F.2d 607, 612 (1st Cir.1990); United States v. Jackson, 627 F.2d 1198, 1216-17 & n.36 (D.C. Cir. 1980); Pacelli v. United States, 588 F.2d 360, 367 (2d Cir. 1978); see also Davis v. United States, 12 F.2d 253, 257 (5th Cir. 1926) ("Although conspiracy be not charged, if it be shown by the evidence to exist, the act of one or more defendants in furtherance of the common plan is in law the act of all.").

While the conspiracy need not be charged, it must be proven at trial.  "Of course, in order to convict a defendant under a Pinkerton theory there first must be a conspiracy." United States v. Chairez, 33 F.3d 823, 827 (7th Cir. 1994).  Either by reference to a conspiracy count or otherwise, the jury must be instructed that the government must prove beyond a reasonable doubt that the conspiracy existed and that the defendant was a member of that conspiracy.  Thus, at the Jessica Crandall trial, in order for the government to hold Jessica Crandall liable under Pinkerton for substantive offenses charged in counts 2, 3, 4, & 6, the government must prove and the jury must find that a conspiracy existed, Jessica Crandall was a member of the conspiracy and guilty of the conspiracy, and that the substantive offense was committed in furtherance of that conspiracy.

In this particular case, a conspiracy was in fact charged in count 1 of the indictment. Jessica Crandall is charged as a conspirator, along with Justin Crandall, in count 1.  The government intends to prove at trial that defendant Jessica Crandall is guilty of the conspiracy in count 1 (by way of her plea of guilty to count 1, and as well as other evidence) and then prove

that she is guilty of counts 2, 3, 4, & 6 by way of Pinkerton liability.  The law holds each member of a conspiracy legally responsible for any substantive crimes committed by another co-conspirator if those crimes (1) were within the scope of the conspiracy; or (2) were reasonably foreseeable as a necessary or natural consequence of the unlawful agreement.

Because "a theory of defendant liability need not be pleaded in the indictment," United States v. Washington, 106 F.3d 983, 1011 (D.C. Cir. 1997), there is no requirement that the Pinkerton theory of liability be charged or referred to in the indictment.  Furthermore, the charged substantive acts need not be listed as overt acts in the conspiracy count. Id.  In short, the defendant need not be given notice that the government intends to rely upon a Pinkerton theory of liability.  United States v. Jimenez, 509 F.3d 682, 692 (5th Cir. 2007).

Jessica Crandall can be convicted of substantive offenses as charged in counts 2, 3, 4 & 6 of the indictment even if those substantive offenses were solely committed by Justin Crandall in the course of and in furtherance of the conspiracy as charged in count 1 of the indictment.  The government must prove: 1) Jessica Crandall is guilty of the charge of conspiracy as alleged in Count 1;  2) Justin Crandall, a member of the same conspiracy, committed the substantive offenses charged in counts 2, 3, 4, or 6 during the time that Jessica Crandall was also a member of the same conspiracy;  3) Justin Crandall committed the substantive offenses in counts 2, 3, 4, or 6 to advance the goals of the conspiracy; and  4) it was reasonably foreseeable to Jessica Crandall that Justin Crandall would commit the substantive offenses charged in counts 2, 3, 4, or 6 in order to advance the goals of the conspiracy.  The government is NOT required to prove that Jessica Crandall actually knew about the crimes charged in counts 2, 3, 4, or 6, or that Jessica Crandall actually realized that this type of crime would be committed as part of the conspiracy.  See Pinkerton v. United States, 328 U.S. 640, 647–48 (1946); United States v. Wantuch, 525 F.3d 505, 518–20 (7th

Cir. 2008); see also United States v. Redwine, 715 F.2d 315, 322 (7th Cir. 1983); United States v. Kimmons, 917 F.2d 1011, 1017 (7th Cir. 1990); U.S. v. Walker, 142 F.3d 103, 111 (2d Cir. 1998), cert. denied, 525 U.S. 896, 119 S. Ct. 219, 142 L. Ed. 2d 181 (1998) and cert. denied, 525 U.S. 896, 119 S. Ct. 220, 142 L. Ed. 2d 181 (1998) and cert. denied, 525 U.S. 988, 119 S. Ct. 458, 142 L. Ed. 2d 411 (1998); See U.S. v. Sperling, 506 F.2d 1323, 1341 (2d Cir. 1974), cert. denied, 420 U.S. 962, 95 S. Ct. 1351, 43 L. Ed. 2d 439 (1975) and cert. denied, 421 U.S. 949, 95 S. Ct. 1682, 44 L. Ed. 2d 103 (1975); U.S. v. Cantone, 426 F.2d 902 (2d Cir. 1970), cert. denied, 400 U.S. 827, 91 S. Ct. 55, 27 L. Ed. 2d 57 (1970); United States v. Villagrana, 5 F.3d 1048, 1052 (7th Cir. 1993); United States v. Chairez, 33 F.3d 823 (7th Cir. 1994) (co-conspirator vicariously liable under Pinkerton despite claim that he did not know or suspect the presence of a gun in the vehicle); United States v. Stott, 245 F.3d 890, 908 (7th Cir. 2001), citing United States v. Sandoval-Curiel, 50 F.3d 1389, 1394–95 (7th Cir. 1995); see also United States v. Elizondo, 920 F.2d 1308, 1317 (7th Cir. 1990).  One of the elements that must be proved beyond a reasonable doubt in order to hold a defendant liable for his co-conspirator's crimes is that the crimes must have been committed in furtherance of the conspiracy. Stott, 245 F.3d at 908–09; "Once a conspiracy is shown to exist, the Pinkerton doctrine permits the conviction of one conspirator for the substantive offense of other conspirators committed during and in furtherance of the conspiracy, even if the offense is not an object of the conspiracy.", citing U.S. v. Christian, 942 F.2d 363, 367 (6th Cir. 1991), cert. denied, 502 U.S. 1045, 112 S. Ct. 905, 116 L. Ed. 2d 806 (1992).  In Pinkerton v. U.S., 328 U.S. 640, 645–648, 66 S. Ct. 1180, 1183–1185, 90 L. Ed. 1489 (1946), the Supreme Court held that even though there was no evidence that one of two conspirators participated directly in the commission of the substantive offenses charged in the indictment, that conspirator could still be convicted of the substantive offenses based on the principle that the "act of one partner (committed

in furtherance of the conspiracy) may be the act of all." Accord U.S. v. Martin, 920 F.2d 345, 348 (6th Cir. 1990), cert. denied, 500 U.S. 926, 111 S. Ct. 2038, 114 L. Ed. 2d 122 (1991) ("The Pinkerton doctrine permits conviction of a conspirator for the substantive offenses of other conspirators committed during and in furtherance of the conspiracy."); U.S. v. Adamo, 742 F.2d 927, 943–944 (6th Cir. 1984), cert. denied, 469 U.S. 1193, 105 S. Ct. 971, 83 L. Ed. 2d 975 (1985) ("Once a person becomes a member of a conspiracy, he or she may 'be held responsible for all that may be … done' by co-conspirators."), cert. denied, 469 U.S. 1193, 105 S.Ct. 971, 83 L.Ed.2d 975 (1985); U.S. v. Chambers, 382 F.2d 910, 914 (6th Cir. 1967)) ("Where the substantive offense is committed by one or more conspirators in furtherance of an unlawful activity, all members of the conspiracy are guilty of the substantive offense.").

A defendant such as Jessica Crandall once found to be a member of a conspiracy-----she admitted as so with her guilty plea to count 1 of the indictment, whatever her level of participation, may be criminally responsible for the substantive acts of which she is unaware by persons who are co-conspirators of the conspiracy, if done as part of the conspiratorial design.  The extent of a defendant's participation has no bearing on the issue of a defendant's guilt.  A conspirator's liability is not measured by the extent or duration of his participation.  Indeed, each member may perform separate and distinct acts and may perform them at different times.  Some conspirators play major roles, while others play minor parts in the scheme.  An equal role is not what the law requires.  In fact, even a single act may be sufficient to draw the defendant within the gambit of the conspiracy. United States v. Cirillo, 468 F.2d 1233, 1239 (2d Cir. 1972).  Evidence of the entire scope of the conspiracy is admissible against each co-conspirator regardless of how minor the co-conspirator's role may have been.  United States v. Nersesian, 824 F.2d 1294, 1304 (2d Cir. 1987).  Even if Jessica Crandall did not personally participate in the substantive offenses/acts of co-conspirator

Justin Crandall or even if she did not have actual knowledge of those acts or plans, so long as those acts or plans were reasonably foreseeable to Jessica Crandall, she can be found guilty of those substantive acts.  The reason for this is simply that a co-conspirator is deemed to be the agent of all other members of the conspiracy.  Therefore, all of the co-conspirators bear criminal responsibility for acts or plans that are undertaken to further the goals of the conspiracy.

**The Indictment**

On March 17, 2017, a federal grand jury filed an indictment against defendants Justin Crandall and Jessica Crandall.  The grand jury indicted both defendants on counts 1-6. Additionally, the grand jury also charged only Justin Crandall in count 7.  Defendant Justin Crandall has pleaded guilty pursuant to a plea agreement.  Jessica Crandall has pleaded guilty to counts 1 & 5 of the indictment and she declined to enter into a plea agreement.  She is thereby proceeding to trial on counts 2, 3, 4, & 6 of the indictment.  The indictment as filed reads as follows:

COUNT 1
[Conspiracy to Sexually Exploit a Child]

From in or about November of 2016 through on or about February 13, 2017, in Delaware County, in the Northern District of New York, defendants JUSTIN CRANDALL and JESSICA CRANDALL conspired with each other to use V-1, a minor born in 2015 whose identity is known to the grand jury, to engage in sexually explicit conduct for the purpose of producing one ore more visual depictions of such conduct, knowing and having reason to know that such visual depictions would be transported and transmitted using a means and facility of interstate and foreign commerce and in and affecting such commerce, where such visual depictions were produced using materials that had been mailed, shipped, and transported in and affecting interstate and foreign commerce

by any means, including by computer, and where at least one such visual depiction was actually transmitted using any means and facility of interstate and foreign commerce and in and affecting interstate and foreign commerce, in violation of Title 18, United States Code, Sections 2251(a) & (e).

COUNTS 2 - 6
[Sexual Exploitation of a Child]

On or about the dates listed below, in Delaware County, in the Northern District of New York, defendants JUSTIN CRANDALL and JESSICA CRANDALL, used V-1, a minor born in 2015 whose identity is known to the grand jury, to engage in sexually explicit conduct for the purpose of producing one ore more visual depictions of such conduct, knowing and having reason to know that such visual depictions would be transported and transmitted using a means and facility of interstate and foreign commerce and in and affecting such commerce, and where such visual depictions were produced using materials that had been mailed, shipped, and transported in and affecting such commerce by any means, including by computer, and where at least one such visual depiction was actually transmitted using any means and facility of interstate and foreign commerce and in and affecting interstate and foreign commerce, in violation of Title 18, United States Code, Sections 2251(a) & (e) and 2(a).

| Count | Date | Minor |
|---|---|---|
| 2 | January 16, 2017 | V-1, a minor child born in 2015 |
| 3 | January 30, 2017 | V-1, a minor child born in 2015 |
| 4 | February 1, 2017 | V-1, a minor child born in 2015 |
| 5 | February 6, 2017 | V-1, a minor child born in 2015 |
| 6 | February 7, 2017 | V-1, a minor child born in 2015 |

COUNT 7
[Distribution of Child Pornography]

On or about February 9, 2017, in Delaware County, in the Northern District of New York, defendant JUSTIN CRANDALL, knowingly distributed child pornography, using a means and

facility of interstate and foreign commerce shipped and transported in and affecting interstate and foreign commerce by any means, including by computer, in that the defendant sent a text message to Individual A, a person whose identity is known to the grand jury, by using the Internet and a cellular telephone containing a graphic image file depicting V-1 engaged in sexually explicit conduct, in violation of Title 18, United States Code, Sections 2252A(a)(2)(A) & (b)(1).

FORFEITURE ALLEGATION

1.    The allegations contained in Counts 1-7 of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 2253.

2.    Pursuant to Title 18, United States Code, Section 2253, upon conviction of one or more offenses in violation of Title 18, United States Code, Sections 2251 or 2252A, the defendants, JUSTIN CRANDALL and JESSICA CRANDALL, shall forfeit to the United States of America any property, real or personal, used or intended to be used to commit or to promote the commission of the offenses.  The property to be forfeited includes, but is not limited to, the following:

      a.    One black colored Samsung Cellular Telephone with SD card, Model #: SM-S120VL, Serial #: GPSAS120VCB, IMEI #: 359259071509110.

3.    If any of the property described above, as a result of any act or omission of the defendant:

      a.    cannot be located upon the exercise of due diligence;

      b.    has been transferred or sold to, or deposited with, a third party;

      c.    has been placed beyond the jurisdiction of the court;

      d.    has been substantially diminished in value; or

e.      has been commingled with other property which cannot be divided without

difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title

21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section

2253(b) and by Title 28, United States Code, Section 2461(c).


**The Facts**

On February 11, 2017, the New York State Police (NYSP) received a complaint from

B.K. in which he reported he had received an image of a minor child engaged in a sexual act via

the Google Voice Text Messaging Service on February 8, 2017 or February 9, 2017.  B.K. told

the NYSP that he received this image from an old acquaintance of his named JUSTIN D.

CRANDALL from the cellular telephone number (XXX) XXX-5582.  B.K. told the NYSP that

JUSTIN CRANDALL'S cell phone was (XXX) XXX-5582 and that CRANDALL

communicated with him using that cell phone and sent that image from that cell phone to B.K.

B.K. described the image as an erect male's uncircumcised penis resting on the face of a minor

female in which the minor female's hand was holding the male's penis.  B.K. told the NYSP that

he believed the erect male's uncircumcised penis depicted in the image was JUSTIN D.

CRANDALL'S penis since he and JUSTIN D. CRANDALL exchanged several naked images of

themselves from the waist down over the last two years.  B.K. stated that he did not recognize

the minor female depicted in the image but told the NYSP that the minor female depicted in the

image had blonde hair and appeared to be approximately between the ages of 3 and 8.

After receiving this image of this minor from JUSTIN D. CRANDALL, B.K. told the

NYSP that he became concerned for the safety of the minor female depicted in the image.  B.K.

told the NYSP that he recalled having text message conversations with JUSTIN D. CRANDALL in January 2017 during which JUSTIN D. CRANDALL told him that he had a "little whore" he was in the process of training.  During these conversations, JUSTIN D. CRANDALL told B.K. that his wife babysat for the "little whore."  JUSTIN D. CRANDALL informed B.K. he was trying to get "her" to open her mouth and perform oral sexual contact on JUSTIN D. CRANDALL'S penis.  In addition, JUSTIN D. CRANDALL described how he had ejaculated on "her" face and had attempted vaginal sexual intercourse on "her."  JUSTIN D. CRANDALL reported to B.K. that "she" was too tight to insert his penis all the way into "her" vagina but far enough to insert just the head of his penis into "her" vagina and ejaculate.  B.K. told the NYSP that these communications with  JUSTIN D. CRANDALL occurred over JUSTIN D. CRANDALL's cell phone (XXX) XXX-5582.

Besides these sexual activities, JUSTIN D. CRANDALL told B.K. that he was trying to "whore her out."  At that time, JUSTIN D. CRANDALL asked B.K. to locate a "creepy old man who might be into that kind of thing and has a bunch of money."  B.K. told the NYSP that he was not sure who "her" and "she" was throughout these text message conversations with defendant.  At first, B.K. believed JUSTIN D. CRANDALL was describing a sexual fantasy or an old ex-girlfriend who was willing to engage in sexual activities.  However, after observing the image JUSTIN D. CRANDALL sent via his cell phone to B.K. of the minor female, B.K. then believed JUSTIN D. CRANDALL was describing the minor female depicted in the image throughout their conversation in January 2017.

Following the interview with B.K., B.K. provided the New York State Police written consent to conduct a search of his Hewlett-Packard (HP) Pavilion Elite desktop computer.  B.K. told the NYSP that the text messaging conversations and the image of the minor female sent by

JUSTIN D. CRANDALL via defendant's cell phone were still preserved within the Google

Voice software on B.K.'s computer.  After obtaining written consent, members of the New York

State Police reviewed these text messaging conversations between JUSTIN D. CRANDALL and

B.K., which occurred over JUSTIN D. CRANDALL's cell phone, and also the image of the

minor female as sent by JUSTIN D. CRANDALL via his cell phone, and as described by B.K.

during his interview.  The New York State Police were able to confirm the content and nature of

the text message conversations between B.K. and JUSTIN D. CRANDALL as well as the image

of the minor child sent by JUSTIN D. CRANDALL via his cell phone.  The New York State

Police documented these text messages and the image of the minor child with digital

photography before seizing B.K.'s HP Pavilion Elite desktop computer for forensic extraction

and analysis.

      After speaking with B.K. on February 11, 2017, the New York State Police applied for a

search warrant to search the residence of JUSTIN D. CRANDALL and his wife, JESSICA L.

CRANDALL, at 240 Bird Avenue Sidney, New York 13838.  Upon arriving at this residence,

law enforcement knocked on the house door and waited until JESSICA CRANDALL answered

and opened the door.  At no time did law enforcement make entry into this residence prior to

JESSICA CRANDALL answering and opening the door to this residence.  After JESSICA

CRANDALL answered and opened the door to the house, law enforcement identified themselves

to her and informed her that they had a search warrant to search the residence.  JESSICA

CRANDALL was cooperative with law enforcement.  After identifying themselves as law

enforcement and after JESSICA CRANDALL had opened and answered the residence door, law

enforcement then entered the residence in an orderly fashion to conduct their search of the

residence.

Shortly thereafter JUSTIN D. CRANDALL arrived home in a vehicle driven by JUSTIN CRANDALL.  He parked/stopped his vehicle on the street near the residence.  Law enforcement officers approached him and the vehicle that he drove.  JUSTIN CRANDALL was taken into custody.  During this contact, the New York State Police observed in plain view in the vehicle JUSTIN CRANDALL's black colored cellular telephone, further identified as a Samsung Cellular Telephone, Model #: SM-S120VL, IMEI #: 359259071509110.  The NYSP retrieved his cell phone that was in plain view inside the vehicle and secured it.  When the cell phone was eventually searched pursuant to a separate search warrant, recovered from the cell phone were videos and images showing JUSTIN CRANDALL and JESSICA CRANDALL sexually torturing and sexually molesting the 17 month old child.

JUSTIN D. CRANDALL voluntarily agreed to be interviewed and was transported to the New York State Police, Sidney Station, located in Sidney, New York.  After being advised of his Miranda Warnings and Rights, JUSTIN D. CRANDALL waived his rights and voluntarily provided the following information in a video/audio recorded interview:

1.      During the course of the interview, the New York State Police explained to JUSTIN D. CRANDALL some of the sexually implicit text messages provided by B.K. which JUSTIN D. CRANDALL had sent to him. JUSTIN D. CRANDALL told the NYSP that he recently took and sent the image of his erect penis resting on the face of his neighbor's minor female child via text message over his cell phone.  JUSTIN D. CRANDALL admitted and confirmed that the minor female child's hand was touching his erect penis in the image that he sent via his cell phone to B.K. Although JUSTIN D. CRANDALL claimed he did not know the name of

the minor female child depicted in the image, JUSTIN D. CRANDALL
told the NYSP that the minor female child's mother was named (he
provided her first name) and they lived next door to him and his family.
JUSTIN D. CRANDALL confessed that his cellular telephone, identified
as a Samsung cellular telephone, contained three images of the minor
female child.  Besides the minor female child, JUSTIN D. CRANDALL
reported his cellular telephone may contain other images of his youngest
daughter unclothed, images he took because his daughter was gaining
weight.

2.      JUSTIN D. CRANDALL confessed and admitted that he touched the
minor female child in a sexual manner when he was under the influence of
methamphetamine. Specifically, when asked if he had engaged in "sex"
with the minor female child, JUSTIN D. CRANDALL asked to define the
term, "sex."  When provided with a definition, JUSTIN D. CRANDALL
denied placing his penis inside of the minor female child's mouth or
vagina and ejaculating on the minor female child, but instead confessed
that he placed his penis on the top of the minor female child's vaginal
area.


On February 12, 2017, the New York State Police interviewed the mother of the victim
minor female child-----the minor female child that JUSTIN CRANDALL photographed using his
cell phone as he placed his erect penis on the mouth of the female minor child, and then sent that
image via texting using his cell phone to B.K.  (the image that the NYSP recovered on B.K.'s

digital device).  The mother informed the NYSP that her minor female child was approximately

17 Months old during the time that JUSTIN CRANDALL AND JESSICA CRANDALL sexually

tortured and sexually molested her daughter.  The mother told the NYSP that JESSICA L.

CRANDALL and her husband JUSTIN D. CRANDALL began babysitting the 17 month old

victim on Monday evenings after the Thanksgiving holiday in November 2016 and they

continued to do so up until February 11, 2017.

The mother told the NYSP that recently she noticed some changes in the 17 month old's

behavior.  The mother stated that the 17 month old victim tended to cling more to her when she

dropped off the child at JUSTIN and JESSICA CRANDALL'S residence, and especially when

JUSTIN D. CRANDALL was present.  In addition, the mother recently noticed an unexplained

mark, similar to a scratch, on the 17 month old's right cheek and a bite mark on her left arm.

When the mother picked up her daughter from JUSTIN and JESSICA CRANDALL'S residence,

she noticed the injuries and concealing makeup on her daughter's face.  When the mother asked

JESSICA L. CRANDALL what occurred, JESSICA L. CRANDALL responded that her son had

bit the 17 month old in the arm and threw something at her face.

In addition to these injuries, the mother told the NYSP that she uncovered several other

bruises or marks on the 17 month old's body in places such as her head, the upper thigh of her

right leg, her left upper thigh, and her butt.  The mother advised that she was extremely upset and

immediately contacted JESSICA L. CRANDALL.  JESSICA L. CRANDALL'S tone was very

defensive and she informed the mother that she treated the 17 month old minor female as one of

her own children.

Lastly, the mother told the NYSP that in the past couple of days the 17 month old child

had been wetting her diapers at a greater frequency and had showed some defiance and

discomfort when trying to wipe her daughter's vaginal and anal areas.  The mother told the NYSP that her daughter now tightly clenched her legs together when she produced fecal matter making it very extremely difficult to clean the 17 month old child's anal area appropriately.  The mother told the NYSP that she sensed it was almost as if the 17 month old child did not want anyone touching her private areas at all.

On February 13, 2017, JUSTIN D. CRANDALL'S wife, JESSICA L. CRANDALL, was contacted by the New York State Police and agreed to be interviewed at the New York State Police, Sidney Station, in connection with the investigation.  After being advised of her Miranda Warnings and Rights, JESSICA L. CRANDALL waived her rights and voluntarily provided the following information during a video/audio recorded interview:

JESSICA CRANDALL told the NYSP that beginning in or around December of 2016, JUSTIN D. CRANDALL and JESSICA CRANDALL engaged in repeated sexual activities with their neighbor's minor female child, the 17 month old female child, while JESSICA L. CRANDALL and JUSTIN D. CRANDALL babysat the child at their residence located in Sidney, New York.  JESSICA L. CRANDALL told the NYSP that the sexual abuse began when JUSTIN D. CRANDALL attempted to place his penis into the 17 month old child's mouth.

JESSICA L. CRANDALL told the NYSP that on January 2, 2017 JUSTIN D. CRANDALL attempted to place his penis in the 17 month old child's mouth and then spat on her.  Since he could not insert his penis into her mouth, JUSTIN D. CRANDALL attempted to place his penis inside the 17 month old child's vagina after he spat on his erect penis as well as the child's vagina for lubrication.  JESSICA L. CRANDALL told the NYSP that JUSTIN D. CRANDALL was unable to place his penis inside of the 17 month old child's vagina because the child was clenching her legs in pain and discomfort.  JESSICA L. CRANDALL further told the

NYSP that she watched these activities as they occurred and she masturbated as JUSTIN CRANDALL did these things to the 17 month old child.  JESSICA L. CRANDALL also told the NYSP that she watched JUSTIN D. CRANDALL as he masturbated and then ejaculated on the 17 month old child's stomach area.

JESSICA L. CRANDALL told the NYSP that on January 23, 2017, JUSTIN D. CRANDALL bound JESSICA's legs with a sheet and her hands with Velcro straps from his toolbox.  JESSICA L. CRANDALL also described how JUSTIN D. CRANDALL then also bound the 17 month old child's arms in the same fashion with Velcro, while she lay on the other side of their bed.  JESSICA L. CRANDALL confessed that she performed oral sexual contact on JUSTIN D. CRANDALL while he "moved back and forth" between the 17 month old child and JESSICA L. CRANDALL.  When JUSTIN D. CRANDALL moved toward the 17 month old child's position on the bed, JESSICA L. CRANDALL described how JUSTIN D. CRANDALL struck the child in the head with his erect penis on approximately three separate occasions before JUSTIN instructed JESSICA L. CRANDALL to suck on his erect penis until he climaxed. JESSICA CRANDALL further described how after being untied, JESSICA L. CRANDALL went into the bathroom to clean herself up at JUSTIN D. CRANDALL'S request.  A short time later, JUSTIN D. CRANDALL entered the bathroom carrying the 17 month old child and then placed the child in the bathtub.  JUSTIN D. CRANDALL then ordered JESSICA L. CRANDALL to clean up the 17 month old child and so JESSICA L. CRANDALL gave the child a bath.

JESSICA L. CRANDALL also told the NYSP that on February 6, 2017 she observed a flea or bug in the 17 month old child's hair so she placed mayonnaise in the child's hair as a home remedy.  JESSICA L. CRANDALL stated that JUSTIN D. CRANDALL took a spoonful

of mayonnaise and threw it on the 17 month old child and directed JESSICA L. CRANDALL to rub mayonnaise over the child's body.  While JESSICA L. CRANDALL was rubbing the mayonnaise on the child's body, JESSICA L. CRANDALL told the NYSP that she observed JUSTIN D. CRANDALL rubbing his penis over his clothes.  JESSICA L. CRANDALL stated that she believed JUSTIN D. CRANDALL was sexually aroused while watching JESSICA L. CRANDALL place mayonnaise on the child's body.  JESSICA L. CRANDALL observed JUSTIN D. CRANDALL take a digital photograph of the 17 month old child covered in mayonnaise with his cellular telephone.

JESSICA L. CRANDALL told the NYSP that also on February 6, 2017 JUSTIN D. CRANDALL performed oral sexual contact on her and then placed the 17 month old child's head in her vaginal area for a period of approximately thirty seconds to one minute.  JESSICA L. CRANDALL stated that she felt the child's nose touch her buttocks as JUSTIN D. CRANDALL pushed the child's face into JESSICA L. CRANDALL'S vagina.  JESSICA L. CRANDALL also stated that while the  child's head was in her vaginal area, JUSTIN D. CRANDALL told her to look up and say "cheese" as he took a digital photograph using his cellular telephone of the 17 month old child situated between JESSICA L. CRANDALL'S spread legs.

JESSICA L. CRANDALL told the NYSP that she knew the child sexual abuse of the 17 month old child was wrong.  JESSICA L. CRANDALL stated that she tried not to orgasm during the sexual activities involving the child.  JESSICA L. CRANDALL informed the NYSP that she allowed the child sexual abuse to occur because JUSTIN D. CRANDALL paid more sexual attention to her when the 17 month old child was involved.

In addition to the sexual abuse of the child, JESSICA L. CRANDALL told the NYSP that JUSTIN D. CRANDALL also engaged in physical abuse on some occasions.  During the first

occasion, JESSICA L. CRANDALL stated that JUSTIN D. CRANDALL bit the child when she would not stop crying.  On the second occasion, JUSTIN D. CRANDALL pushed the child and she hit her chin on a stand in the bedroom of their residence.  JESSICA L. CRANDALL stated that the child developed a small bruise on her face.  JUSTIN D. CRANDALL told JESSICA L. CRANDALL take care of the bruise.  As a result, JESSICA L. CRANDALL placed cosmetic makeup on the child's face in order to conceal the extent of the injury.  JESSICA L. CRANDALL and JUSTIN D. CRANDALL were concerned that the child's mother would locate the injury to the child's face and ask questions.

## CONCLUSION

The government respectfully reserves the right to supplement this filing as needed in the future.


Date: November 18, 2017                              Sincerely,

                                                    GRANT C. JAQUITH
                                                    Acting United States Attorney

                                                    *Miroslav Lovric*
                                                    Assistant U.S. Attorney

## CERTIFICATE OF SERVICE FOR ELECTRONIC CASE FILING SYSTEM

I hereby certify that on November 18, 2017, I electronically filed with the NDNY Clerk of the District Court using the CM/ECF system the above-referenced document(s) in connection with the above-referenced case.  The CM/ECF system automatically sent electronic notifications of such filing to the attorneys of record in this case, as maintained by the District Court Clerk's Office, AND who are properly registered in the CM/ECF system for the NDNY as required pursuant to NDNY General Order #22.  As for any attorney of record in this case who is not registered in the CM/ECF system for the NDNY, the government has caused to be mailed or faxed to that attorney either the actual CM/ECF electronic notification/e-mail as received from the CM/ECF system by the government and/or the actual documents being filed.  Therefore, the non-registered attorney(s) will receive the same electronic ECF notice with the same information as will the attorney(s) who is/are registered in the CM/ECF system.

*Miroslav Lovric*
Assistant U.S. Attorney