IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | Criminal No.    3:17-CR-63 (TJM) |
| | ) | |
| **v.** | ) | **Plea Agreement** |
| | ) | |
| **JESSICA CRANDALL,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

U.S. DISTRICT COURT · N.D. OF N.Y.
**F I L E D**
NOV 2 2 2017
AT_____ O'CLOCK_____
Lawrence K. Baerman, Clerk · Binghamton

The United States of America, by and through its counsel of record, the United States

Attorney for the Northern District of New York, and defendant **JESSICA CRANDALL**

(hereinafter "the defendant"), by and through the defendant's counsel of record, hereby enter into

the following plea agreement pursuant to Rule 11(c)(1)(A) of the Federal Rules of Criminal

Procedure:

1)    **The Defendant's Obligations:**

   a)  **Guilty Plea:** The defendant will change the defendant's previously-entered plea of "not

       guilty" and plead guilty to Count 2 of the indictment in Case No. 3:17-CR-63 (TJM)

       charging Sexual Exploitation of a Child, in violation of 18 U.S.C. §§ 2251(a) & (e) and

       2(a). The defendant previously pled guilty to Counts 1 and 5 of the indictment in Case No.

       3:17-CR-63 (TJM) charging Conspiracy to Sexually Exploit a Child and Sexual

       Exploitation of a Child, in violation of 18 U.S.C. §§ 2251(a) & (e) and 2(a), and all

       agreements in this plea agreement, including but not limited to the waiver of rights to

       appeal and collaterally attack the conviction and sentence, apply to the defendant's guilty

       plea, conviction, sentence, and judgment on those counts.

   b)  **Special Assessment:**   The defendant will pay an assessment of $100 per count of

       conviction pursuant to 18 U.S.C. § 3013.  The defendant agrees to deliver a check or money

order to the Clerk of the Court in the amount of $300, payable to the U.S. District Court, at the time of sentencing.

c) **Additional Special Assessment:** In addition to the assessment imposed under § 3013, unless the court finds the defendant to be indigent, the defendant shall pay an additional assessment of $5,000, per count, pursuant to 18 U.S.C. § 3014(a). This assessment is payable only after the defendant has satisfied all outstanding court-ordered fines, orders of restitution, and any other obligation related to victim-compensation arising from the criminal convictions on which this assessment is based.  18 U.S.C. § 3014(b).

d) **Compliance with Other Terms of Agreement:** The defendant will comply in a timely manner with all of the terms of this plea agreement.

e) **Restitution:** The defendant will consent to entry of an order directing the defendant's payment of restitution in full to any person or entity who qualifies as a victim of the offenses of conviction under 18 U.S.C. § 3663 or § 3663A.  Additionally, the Court will enter an order directing the defendant to pay restitution to any minor victims depicted in images encompassed in any counts to which the defendant is pleading guilty, pursuant to 18 U.S.C. § 2259(b).  Restitution shall be determined by the Court in "an amount that comports with the defendant's relative role in the causal process that underlies the victims' general losses," and shall be a "reasonable and circumscribed award imposed in recognition of the indisputable role of the [defendant] in the causal process underlying the victim[s'] losses and suited to the relative size of that causal role." *Paroline v. United States*, __U.S.__, 134. S.Ct. 1710, 1727 (2014).

f) **Forfeiture:** Pursuant to Title 18, United States Code, Section 2253 and 21 U.S.C. § 853(p), the defendant will consent to entry of an order directing forfeiture to the United States of

the property described in the Forfeiture Allegation in the indictment described above, or to any substitute assets, or to a money judgment, all as more fully set out below:

(1) One black colored Samsung Cellular Telephone with SD card, Model #: SM-S120VL, Serial #: GPSAS120VCB, IMEI #: 359259071509110.

(2) If any of the property described above, as a result of any act or omission of the defendant, either: (a) cannot be located upon the exercise of due diligence; (b) has been transferred or sold to, or deposited with, a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property which cannot be divided without difficulty, the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p) and Fed. R. Crim. P. 32.2(e).

2) **The Government's Obligations:**

    a) **Dismissal of remaining charges:** Upon imposition of a sentence consistent with the terms of this agreement, the government will move to dismiss all charges against the defendant in Case No. 3:17-CR-63 (TJM) other than those to which the defendant pled guilty pursuant to this agreement and on which the Court imposed sentence.  Such dismissal will be without prejudice, permitting the government to seek reinstatement of any and all of those charges if the guilty plea and sentence do not remain in effect.

    b) **Non-prosecution for other offenses:** For so long as the defendant's guilty plea and the sentence remain in effect, the government will not seek other federal criminal charges against the defendant based on conduct described in the indictment in Case No 3:17-CR-63 (TJM) and/or in the paragraph of this agreement entitled "Factual Basis for Guilty Plea,"

occurring before the date on which the defendant signs this agreement. This agreement does not prevent the government from seeking charges based on other conduct.

c) **Compliance with Other Terms of Agreement:** The government will comply in a timely manner with all of the terms of this plea agreement.

3) **Potential Maximum Penalties:** The defendant understands that the Court can impose the following maximum penalties for the offenses to which the defendant agrees to plead guilty and may be required to impose mandatory minimum terms of imprisonment, all as set out below:

a) **Maximum term of imprisonment [As to each of counts 1, 2 & 5]:** 30 years, pursuant to 18 U.S.C. §§ 2251(a) & (e).

b) **Mandatory minimum term of imprisonment [As to each of counts 1, 2 & 5]:** 15 years, pursuant to 18 U.S.C. §§ 2251(a) & (e).

c) **Maximum fine [As to each of counts 1, 2 & 5]:** $250,000, pursuant to 18 U.S.C. § 3571(b).

d) **Supervised release term:** In addition to imposing any other penalty, the sentencing court must require the defendant to serve a term of supervised release between 5 years and life, to begin after imprisonment. *See* 18 U.S.C. § 3583(k). A violation of the conditions of supervised release during that time period may result in the defendant being sentenced to an additional term of imprisonment of up to 3 years.

e) **Required Registration for Sex Offenders:** Under the Sex Offender Registration and Notification Act, the defendant, as a result of the conviction in this case, must register as a sex offender, and keep the registration current, in each jurisdiction where the defendant resides, where the defendant is an employee, and where the defendant is a student. For initial registration purposes, the defendant also must register in New York as a result of

4

this conviction, even if the defendant resides in a different jurisdiction.  A sex offender who knowingly fails to register or update a required registration may be subject to prosecution under 18 U.S.C. § 2250, and face a penalty of up to ten years imprisonment. Further, notwithstanding the description set out above of the consequences of a violation of the conditions of supervised release, if the defendant, while on supervised release, commits any criminal offense under chapter 109A, 110, or 117, or section 1201 or 1591, of Title 18 for which imprisonment for a term longer than 1 year can be imposed, the court will revoke the term of supervised release and require the defendant to serve a term of imprisonment of not less than 5 years on the violation.

    f) **Other adverse consequences:**   Other adverse consequences may result from the defendant's guilty plea as further described in paragraph F below.

4)    **Elements of Offense (Count 1):** The defendant understands that the following are the elements of the offense to which the defendant agrees to plead guilty.  The defendant admits that the defendant's conduct satisfies each and every one of these elements.

    a) First:  Two or more persons conspired to use a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct;

    b) Second:  The defendant joined the conspiracy, either at its inception or sometime during its existence, knowing the purpose of the conspiracy and intending to help it succeed;

    c) Third: The visual depictions that were the object of the conspiracy were actually transported or transmitted in or affecting interstate commerce, or the defendant knew or had reason to know that the visual depictions would be transported or transmitted in or affecting interstate commerce, or the visual depictions were produced using materials that had been mailed, shipped, or transported in or affecting interstate commerce.

5)  **Elements of Offenses (Counts 2 & 5):** The defendant understands that the following are the elements of the offenses to which the defendant agrees to plead guilty. The defendant admits that the defendant's conduct satisfies each and every one of these elements.

a)  First, the victim was less than 18 years old;

b)  Second, the defendant used the minor to take part in sexually explicit conduct for the purpose of producing a visual depiction of that conduct; and

c)  Third, the visual depiction was actually transported or transmitted in or affecting interstate commerce, or the defendant knew or had reason to know that the visual depiction would be transported or transmitted in or affecting interstate commerce, or the visual depiction was produced using materials that had been mailed, shipped, or transported in or affecting interstate commerce.

6)  **Factual Basis for Guilty Plea:** The defendant admits the following facts, that those facts demonstrate the defendant's guilt for the offenses to which the defendant is pleading guilty, and that there are no facts establishing a viable defense to those offenses:

a)  In 2016 and 2017, defendant JESSICA L. CRANDALL and her husband, JUSTIN D. CRANDALL, resided in Sidney, New York (Delaware County). Starting around the Thanksgiving holiday in November of 2016 and then continuing through and until February 11, 2017, JESSICA L. CRANDALL and her husband JUSTIN D. CRANDALL provided day care for a 17 month old female child (hereinafter Victim). They provided day care at their residence for the 17 month old female child on a weekly basis and on one or more days per week. While providing day care to the Victim, the Victim minor was at all times in the custody, control and direct care of both JESSICA L. CRANDALL and/or her husband JUSTIN D. CRANDALL.

6

b)   JESSICA L. CRANDALL and her husband JUSTIN D. CRANDALL conspired, combined, worked together and came to a mutual understanding that while providing day care at their residence for the 17 month old child victim, they would use the Victim minor to engage in sexually explicit conduct for the purpose of producing one or more videos and images of such conduct and JUSTIN D. CRNDALL would use a Samsung Cellular Telephone Model #: SM-S120VL with SD card, as further described below, in order to produce videos and images of the sexually explicit conduct.[1]   In fact, and on multiple occasions during this time period, JUSTIN D. CRANDALL used that Samsung cellular telephone to actually produce several videos and several images, as described below, depicting the Victim minor being used by the CRANDALLS and/or JUSTIN D. CRANDALL to engage in sexually explicit conduct at their residence.

c)   While the 17 month old Victim was in the custody and control of JESSICA L. CRANDALL and JUSTIN D. CRANDALL, JUSTIN D. CRANDALL used that Samsung cellular telephone to actually produce several videos and several images at their residence depicting the Victim minor being used by the CRANDALLS and/or JUSTIN D. CRANDALL to engage in sexually explicit conduct.   These videos and images, as were located, recovered and retrieved by the FBI from that Samsung cellular telephone with SD card as described above, and some of these videos and images are described as follows:

(1) A video charged in Count 2 of the indictment was located on the Samsung cellular telephone SD card in a folder named "My fat dick or nude pics".  In this video, the 17 month old Victim can be seen seated on the toilet in a bathroom at Justin and Jessica

---

[1] The Samsung Cellular Telephone with SD card, Model #: SM-S120VL, Serial #: GPSAS120VCB, IMEI #: 359259071509110 was manufactured outside of New York State and outside of the United States.  This cellular telephone belonged to JUSTIN D. CRANDALL.

Crandall's residence. She is wearing a diaper but has no shirt covering her breast area. Justin Crandall can be observed forcing his uncircumcised penis into the Victim's mouth on two occasions. The Victim, using her hands, forcibly pushes Justin Crandall's penis away from her mouth area. Justin Crandall can then be overheard asking the Victim, "Do you like the taste of the "D" (a reference to his penis). The Victim is clearly upset, crying, and breathing heavy. Her eyes are wide open in fear. She can be overheard whimpering as well. Justin Crandall then called the Victim "…you little fucking twat." Justin Crandall then spits on the Victim's forehead. Justin Crandall can then be heard saying, "Daddy, help me" several times, along with "…help me." Justin Crandall then uses his finger to strike the Victim around her mouth area. Justin Crandall then uses his entire hand to slap the Victim across her mouth and lower face area. Justin Crandall then choked the neck area of the Victim with his hand causing her to have trouble breathing. Justin Crandall then told the Victim that he is going to "choke the fucking life out of you." Justin Crandall then pinched the Victim's one cheek extremely hard, which caused the Victim to squirm, close her one eye, and grimace in pain and discomfort. Justin Crandall then spat on the Victim a second time during the video. At the end of the video file, Justin Crandall removed his uncircumcised penis from the fly of his pants. Justin Crandall then strokes his penis in front of the Victim while calling the Victim's name and asking her to follow him out of the bathroom. JESSICA D. CRANDALL denies participating in the creation or having knowledge of the creation of this specific video, but admits that the description of the video is accurate, and that she is legally responsible for its creation.

8

(2) Also located and retrieved from the Samsung cellular telephone were twelve (12) images of the 17 month old Victim and where the images show Justin Crandall's penis resting on, next to, or placed on the Victim's face, and all of which show his penis near her mouth area. Justin Crandall's face and penis are both visible in two (2) of those images along with the Victim's face. One of these images is in fact the image that Justin Crandall sent via text to Witness1 (as described further below).

(3) A video charged in Count 5 of the indictment was located on the Samsung cellular telephone SD card. In this video, the 17 month old Victim can be seen seated on the floor being covered with mayonnaise by Jessica Crandall using a large spoon. The victim is covered all over her body from head to toe with mayonnaise. Jessica Crandall can be seen forcing the spoon near the victim's mouth. Justin Crandall is believed to be filming the video. Justin Crandall gets verbally excited when Jessica Crandall forced the mayonnaise near the 17 month old victim's vaginal area. Jessica Crandall can be overheard saying to the victim, "that's how you are going to bed." Justin Crandall can be seen tying the 17 month old victim's hands together with a stretchy car style bungee cord while Jessica Crandall can be seen holding up the victim's back and propping the victim forward. Justin Crandall can then be seen using a long, thin wooden dowel to hit the 17 month old victim in the face and upper leg area near the victim's vaginal area. The 17 month old victim is seen shaking uncontrollably during this video and is crying.

d) On February 11, 2017, JUSTIN D. CRANDALL was interviewed by the New York State Police (NYSP). After being advised of his *Miranda* warnings and rights, JUSTIN D.

CRANDALL waived his rights and voluntarily provided the following information in a video & audio recorded interview:

(1) JUSTIN D. CRANDALL told the NYSP that he recently produced an image of his erect penis resting on the face of the Victim minor (17 month old female minor) and that he then sent/distributed that image to a friend of his (hereinafter Witness1) via text message using his Samsung cellular telephone. JUSTIN D. CRANDALL admitted and confirmed that the Victim minor's hand was touching his erect penis in the image that he produced and sent to Witness1 via his cellular telephone.

(2) JUSTIN D. CRANDALL admitted that his cellular telephone, identified as a Samsung cellular telephone, contained several sexually explicit images of the Victim minor that were produced by defendant.

(3) JUSTIN D. CRANDALL admitted that he touched the Victim minor in a sexual manner. JUSTIN D. CRANDALL admitted that he placed his penis on the top of the minor female child's vaginal area.

(4) JESSICA L. CRANDALL does not dispute JUSTIN D. CRANDALL made these statements to the New York State Police.

e) On February 13, 2017, JESSICA L. CRANDALL was interviewed by the NYSP. After being advised of her *Miranda* warnings and rights, JESSICA L. CRANDALL waived her rights and voluntarily provided the following information during a video & audio recorded interview:

(1) JESSICA L. CRANDALL told the NYSP that beginning in or around December of 2016, JUSTIN D. CRANDALL and JESSICA L. CRANDALL engaged in repeated sexual activities with the Victim, the 17 month old female child, while JESSICA L.

CRANDALL and JUSTIN D. CRANDALL provided day care for the child at their residence located in Sidney, New York. JESSICA L. CRANDALL told the NYSP that the sexual abuse began when JUSTIN D. CRANDALL attempted to place his penis into the 17 month old child's mouth.

(2) JESSICA L. CRANDALL told the NYSP that on January 2, 2017 JUSTIN D. CRANDALL attempted to place his penis in the 17 month old child's mouth and then spat on her. Since he could not insert his penis into her mouth, JUSTIN D. CRANDALL attempted to place his penis inside the 17 month old child's vagina after he spat on his erect penis as well as the child's vagina for lubrication. JESSICA L. CRANDALL told the NYSP that JUSTIN D. CRANDALL was unable to place his penis inside of the 17 month old child's vagina because the child was clenching her legs in pain and discomfort. JESSICA L. CRANDALL further told the NYSP that she watched these activities as they occurred and she masturbated as JUSTIN CRANDALL did these things to the 17 month old child. JESSICA L. CRANDALL also told the NYSP that she watched JUSTIN D. CRANDALL as he masturbated and then ejaculated on the 17 month old child's stomach area.

(3) JESSICA L. CRANDALL told the NYSP that on January 23, 2017, JUSTIN D. CRANDALL bound JESSICA's legs with a sheet and her hands with Velcro straps from his toolbox. JESSICA L. CRANDALL also described how JUSTIN D. CRANDALL then also bound the 17 month old child's arms in the same fashion with Velcro, while she lay on the other side of their bed. JESSICA L. CRANDALL confessed that she performed oral sexual contact on JUSTIN D. CRANDALL while he "moved back and forth" between the 17 month old child and JESSICA L.

11

CRANDALL. When JUSTIN D. CRANDALL moved toward the 17 month old child's position on the bed, JESSICA L. CRANDALL described how JUSTIN D. CRANDALL struck the child in the head with his erect penis on approximately three separate occasions before JUSTIN instructed JESSICA L. CRANDALL to suck on his erect penis until he climaxed. JESSICA CRANDALL further described how after being untied, JESSICA L. CRANDALL went into the bathroom to clean herself up at JUSTIN D. CRANDALL'S request. A short time later, JUSTIN D. CRANDALL entered the bathroom carrying the 17 month old child and then placed the child in the bathtub. JUSTIN D. CRANDALL then ordered JESSICA L. CRANDALL to clean up the 17 month old child and so JESSICA L. CRANDALL gave the child a bath.

(4) JESSICA L. CRANDALL also told the NYSP that on February 6, 2017 she observed a flea or bug in the 17 month old child's hair so she placed mayonnaise in the child's hair as a home remedy. JESSICA L. CRANDALL stated that JUSTIN D. CRANDALL took a spoonful of mayonnaise and threw it on the 17 month old child and directed JESSICA L. CRANDALL to rub mayonnaise over the child's body. While JESSICA L. CRANDALL was rubbing the mayonnaise on the child's body, JESSICA L. CRANDALL told the NYSP that she observed JUSTIN D. CRANDALL rubbing his penis over his clothes. JESSICA L. CRANDALL stated that she believed JUSTIN D. CRANDALL was sexually aroused while watching JESSICA L. CRANDALL place mayonnaise on the child's body. JESSICA L. CRANDALL observed JUSTIN D. CRANDALL take a digital photograph with his cellular telephone of the 17 month old child covered in mayonnaise.

(5) JESSICA L. CRANDALL told the NYSP that also on February 6, 2017 JUSTIN D. CRANDALL performed oral sexual contact on her and then placed the 17 month old child's head in her vaginal area for a period of approximately thirty seconds to one minute. JESSICA L. CRANDALL stated that she felt the child's nose touch her buttocks as JUSTIN D. CRANDALL pushed the child's face into JESSICA L. CRANDALL'S vagina. JESSICA L. CRANDALL also stated that while the child's head was in her vaginal area, JUSTIN D. CRANDALL told her to look up and say "cheese" as he took a digital photograph using his cellular telephone of the 17 month old child situated between JESSICA L. CRANDALL'S spread legs.

(6) JESSICA L. CRANDALL told the NYSP that she knew the child sexual abuse of the 17 month old child was wrong. JESSICA L. CRANDALL stated that she tried not to orgasm during the sexual activities involving the child. JESSICA L. CRANDALL informed the NYSP that she allowed the child sexual abuse to occur because JUSTIN D. CRANDALL paid more sexual attention to her when the 17 month old child was involved in the sex.

(7) In addition to the sexual abuse of the child, JESSICA L. CRANDALL told the NYSP that JUSTIN D. CRANDALL also engaged in physical abuse on some occasions. During the first occasion, JESSICA L. CRANDALL stated that JUSTIN D. CRANDALL bit the child when she would not stop crying. On the second occasion, JUSTIN D. CRANDALL pushed the child and she hit her chin on a stand in the bedroom of their residence. JESSICA L. CRANDALL stated that the child developed a small bruise on her face. JUSTIN D. CRANDALL told JESSICA L. CRANDALL take care of the bruise. As a result, JESSICA L. CRANDALL placed cosmetic makeup

13

on the child's face in order to conceal the extent of the injury.   JESSICA L. CRANDALL and JUSTIN D. CRANDALL were concerned that the child's mother would locate the injury to the child's face and ask questions.

f) On or about February 8, 2017, JUSTIN D. CRANDALL, using the Samsung cellular telephone described above sent via text a sexually explicit image of the Victim to Witness1. The image sent to Witness1 showed JUSTIN D. CRANDALL's erect, uncircumcised penis resting on the face of the 17 month old Victim and where the Victim's hand was holding JUSTIN D. CRANDALL's penis.

g) The FBI recovered and retrieved from the Samsung cellular telephone utilized by the CRANDALLS this image that JUSTIN D. CRANDALL sent to Witness1 via a text. The FBI also recovered and retrieved numerous additional text messages from the Samsung cellular telephone that JUSTIN D. CRANDALL used to communicate with Witness1. JUSTIN D. CRANDALL texted Witness1 that he had a "little whore" he was in the process of training; that his wife babysat for the "little whore;" and that he was trying to get "her" to open her mouth and perform oral sexual contact on his penis. JUSTIN D. CRANDALL also texted Witness1 that he had ejaculated on "her" face and had attempted vaginal sexual intercourse on "her." JUSTIN D. CRANDALL further texted Witness1 that "she" was too tight to insert his penis all the way into "her" vagina but far enough to insert just the head of his penis into "her" vagina and ejaculate. JUSTIN D. CRANDALL texted Witness1 that he was trying to "whore her out"----referring to the 17 month old Victim and asked Witness1 to locate a "creepy old man who might be into that kind of thing and has a bunch of money."

7) **Sentencing Stipulations:**

14

a) The parties agree that U.S.S.G. §2G2.1 is the applicable guidelines provision and that the base offense level is a 32.

b) The parties agree that U.S.S.G. §2G2.1(b)(1) applies and an increase of 4 levels applies in that the minor victim had not attained 12 years of age.

c) The parties agree that U.S.S.G. §2G2.1(b)(2)(A) applies and an increase of 2 levels applies in that the conduct involved the commission of a sexual act and sexual contact.

d) The parties agree that U.S.S.G. §2G2.1(b)(4) applies and an increase of 4 levels applies in that the offense involved  material that portrays sadistic and masochistic conduct; other depictions of violence; and an infant or toddler.

e)  The parties agree that U.S.S.G. §2G2.1(b)(5) applies and an increase of 2 levels applies in that the minor was otherwise in the custody, care, and supervisory control of the defendant.

f)  The parties agree that U.S.S.G. §3A1.3 applies and an increase of 2 levels applies in that the offense involved the minor victim being physically restrained in the course of the offense.

g)  The parties agree that U.S.S.G. §4B1.5(b) applies and an increase of 5 levels applies in that the offense involved is a covered sex crime and defendant engaged in a pattern of activity involving prohibited sexual conduct.

h)  The government will recommend a 2-level downward adjustment to the applicable federal sentencing guidelines offense level pursuant to U.S.S.G. §3E1.1(a) if, (i) through the time of sentencing, the government is convinced that the defendant has demonstrated "acceptance of responsibility" for the offense(s) to which the defendant is pleading guilty and all relevant conduct, as defined in U.S.S.G. § 1B1.3; and (ii) the government does not determine that the defendant, after signing this agreement, committed any other federal,

state, or local crimes, or engaged in conduct that constitutes "obstruction of justice," as defined in U.S.S.G. §3C1.1.

i)  The government will move for a 1-level downward adjustment to the applicable federal sentencing guidelines offense level pursuant to U.S.S.G. §3E1.1(b) if the government is convinced that the defendant has accepted responsibility within the meaning of U.S.S.G. §3E1.1(a) and further assisted authorities in the investigation or prosecution of the defendant's own misconduct by timely notifying authorities of the defendant's intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently, and the defendant otherwise qualifies for such adjustment by having a combined offense level of 16 or more before receipt of any acceptance of responsibility adjustment under U.S.S.G. §3E1.1(a).

8)  **Waiver of Rights to Appeal and Collateral Attack:** The defendant waives (gives up) any and all rights, including those conferred by 18 U.S.C. § 3742 and/or 28 U.S.C. §§ 2241 and 2255, to appeal and/or to collaterally attack the following (except that the defendant does not waive the right to raise a claim based on alleged ineffective assistance of counsel):

a)  The convictions resulting from the defendant's guilty pleas;

b)  Any sentence to a term of imprisonment of 480 months or less;

c)  Any sentence to a fine within the maximum permitted by law;

d)  Any sentence to a term of supervised release within the maximum permitted by law;

e)  Any order of forfeiture or restitution imposed by the Court that is consistent with governing law and is not contrary to the terms of this agreement.

Nothing in this appeal waiver is meant to be or should be construed as a representation of or agreement concerning the appropriate sentence in this case.

---

A. **Right to Counsel:** The defendant has a right to assistance of counsel in connection with settlement of this case and understands that right.   Defense counsel has advised the defendant of nature of the charges to which the defendant is agreeing to plead guilty and the range of possible sentences.

B. **Waiver of Trial-Related Rights:** The defendant has the following additional constitutional rights in connection with the charges in this case: (i) to be presumed innocent until proven guilty beyond a reasonable doubt; (ii) to plead not guilty; (iii) to trial by jury; (iv) to confront, cross-examine, and compel the attendance of witnesses at trial; (v) to present defense evidence; and (vi) to remain silent and be protected against compelled self-incrimination.  The defendant understands that by pleading guilty, the defendant waives (gives up) these rights.

C. **Court Not Bound by Plea Agreement:** This plea agreement is made pursuant to Rule 11(c)(1)(A) of the Federal Rules of Criminal Procedure.  The Court is neither a party to, nor bound by this Plea Agreement.  The Court may accept or reject this Plea Agreement or defer a decision until it has considered the Presentence Investigation Report prepared by the United States Probation Office.  If the Court rejects the provisions of this agreement permitting the defendant to plead guilty to certain charges in satisfaction of other charges, the Court will permit the defendant to withdraw the plea of guilty before sentencing, pursuant to Fed. R. Crim. P. 11(c)(5) & (d).

D. **Court Not Bound by Agreed-Upon Recommendations, Stipulations, and Requests:** If this agreement contains any provisions under Fed. R. Crim. P. 11(c)(1)(B) by which the

government agrees to recommend, stipulates, or agrees not to oppose the defendant's request, that a particular sentence or sentencing range is appropriate or that a particular provision of the federal sentencing guidelines, or a policy statement, or sentencing factor does or does not apply, such a recommendation, stipulation, or request does not bind the Court, which may make independent factual findings by a preponderance of the evidence and may reject such recommendations, requests, and stipulations between the parties.  If the Court rejects one or more recommendations, stipulations, or requests, the defendant is not entitled to withdraw the defendant's plea of guilty and is not released from the obligations described in this agreement. Under such circumstances, the government reserves the right to support and defend, in connection with any post-sentencing proceedings, any decision the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations, stipulations, or requests set out in this agreement.

**E.  <u>Sentencing:</u>**

    a.  **Maximum terms of imprisonment:**  The defendant understands that the Court has discretion to impose a sentence within the statutory maximum sentence(s) set out in this agreement.  If the defendant is pleading guilty to multiple charges, the Court may be required by law to have the sentences of imprisonment on the convictions resulting from those charges run consecutively to each other.  Otherwise, the Court has discretion to have sentences of imprisonment run concurrently or consecutively.  *See* 18 U.S.C. § 3584.

    b.  **Mandatory minimum terms of imprisonment:**  If specified in this agreement, the conviction on one or more charges to which the defendant has agreed to plead guilty may require imposition of a mandatory minimum term of imprisonment.  In such cases, the court must impose a term of imprisonment no less than the required mandatory minimum

term unless an exception to that requirement applies.  Such exception may be dependent on a motion by the government.

c. **Section 851 Enhancements**: The defendant understands that if the government has filed an information against the defendant as provided 21 U.S.C. § 851, alleging that the defendant has one or more final convictions for a felony drug offense, and, as part of this agreement, the defendant has admitted and/or affirmed that the defendant was so convicted, then, by pleading guilty, the defendant will lose the right to attack any sentence the court imposes by challenging any such prior conviction.

d. **Sentencing guidelines:**

    i. The actual sentence to be imposed upon the defendant is within the discretion of the sentencing Court, subject to the statutory maximum and mandatory minimum penalties, as described above, and the provisions of the Sentencing Reform Act and the United States Sentencing Guidelines promulgated thereunder.  While the Court is not bound to impose a sentence within the applicable sentencing guidelines range, it must take into account the sentencing guidelines, along with the other factors set forth in 18 U.S.C. § 3553(a).

    ii. Any estimate of the defendant's offense level, criminal history category, and sentencing guidelines range provided before sentencing is preliminary and is not binding on the parties to this agreement, the Probation Office, or the Court.  Until the Probation Office has fully investigated the defendant's criminal history, it is not possible to predict with certainty the defendant's criminal history category and, in some cases, the defendant's offense level.

iii. Under certain circumstances, the defendant's criminal history may affect the defendant's offense level under the federal sentencing guidelines. If the presentence investigation reveals that the defendant's criminal history may support an offense level different than an offense level stipulated in this agreement, the parties are not bound by any such stipulation as to the defendant's offense level and may advocate with respect to how the defendant's criminal history affects the offense level.

e. **Factual findings:** The defendant understands that the sentencing Court may make factual findings with respect to any and all sentencing factors and issues, including those referenced in the United States Sentencing Guidelines, whether or not such factors or issues have been admitted by the defendant or stipulated by the parties. In making those findings by a preponderance of the evidence, the Court may consider any reliable evidence, including hearsay. The Defendant understands that the sentence imposed may be determined based upon such judicial fact-finding.

f. **Use of the Defendant's Statements:** The defendant understands that the sentencing court may consider any statement that the defendant has made or makes in this Plea Agreement, during the guilty plea, to the Probation Office, and at sentencing when imposing sentence. In addition the government may be able to use the defendant's statements in this agreement and at the guilty plea and at sentencing in any criminal, civil, or administrative proceeding. For example, if the defendant fails to enter a guilty plea (as required by this agreement) or the defendant's guilty plea is later withdrawn or vacated for any reason other than the Court's rejection of this Plea Agreement under Fed. R. Crim. P. 11(c)(5), the government may introduce the defendant's statements into evidence in any prosecution. If, however, the Court rejects this Plea Agreement under Fed. R. Crim. P. 11(c)(5), and the defendant

withdraws the guilty plea pursuant to Fed. R. Crim. P. 11(d)(2)(A), the government will not be permitted to use any of the defendant's statements in this Plea Agreement. To the extent that Rule 11(f) of the Federal Rules of Criminal Procedure and/or Rule 410 of the Federal Rules of Evidence are inconsistent with this paragraph, the defendant waives (gives up) any protections under those rules.

g. **Government's Discretion to Recommend a Sentence:**   Unless a stipulation in this agreement explicitly limits the government's discretion with respect to its recommendations at sentencing, this agreement does not prevent the government from urging the sentencing Court to find that a particular offense level, criminal history category, ground for departure, or guidelines range applies; from recommending a specific sentence within the applicable guidelines range as determined by the Court or as urged by the government; or, if the government deems appropriate, recommending that the Court impose a sentence above the applicable guidelines range.

h. **Sentencing-Related Information:** The government has the right to advise the sentencing Court and the Probation Office of any information, in aggravation or mitigation of sentencing, whether or not encompassed within the count(s) to which the defendant has agreed to plead guilty, subject only to the limitation described in U.S.S.G. §1B1.8. No stipulation in this plea agreement limits the obligations of both parties to ensure that the sentencing Court has all information pertinent to its determination of an appropriate sentence. The parties may provide any factual information relevant to sentencing to the Probation Office and/or to the Court, without limitation, before or after the completion of the Presentence Investigation Report. The parties agree that the submission of such

information shall not be deemed "advocacy" in violation of any stipulation in this plea agreement.

   i. **Supervised Release Term and Conditions:** If the defendant is placed on supervised release, under some circumstances, including the defendant's violation of one or more supervised release conditions, the Court may extend the term of supervised release, and may modify, reduce, or enlarge the conditions of such release.

F. **Other Adverse Consequences:** The following are some examples of the adverse consequences of pleading guilty other than the sentence imposed by the Court, along with any judicial order of forfeiture and/or restitution:

   a. Conviction of a felony may result in the loss of civil rights, including, but not limited to, the right to vote and the right to possess firearms.

   b. If the defendant is not a United States citizen, such conviction may result in deportation or removal from the United States, may bar readmission to the United States if the defendant leaves the country, and may result in a denial of a pending or future application for citizenship. Under federal law, removal or deportation may be an almost certain consequence of a conviction for a broad range of federal offenses, including, but not limited to, aggravated felonies, as defined in 8 U.S.C. § 1101(a)(43), and crimes of moral turpitude, which includes crimes involving fraud. Removal and other immigration consequences are the subject of a separate proceeding. No one, including the defendant's attorney and the Court, can predict with certainty the effect of the conviction resulting from this agreement on the defendant's immigration status. The defendant understands this uncertainty and nonetheless wishes to plead guilty regardless of any immigration consequences that the

guilty plea may entail, even if the consequence is the defendant's automatic removal from the United States.

c.  A felony conviction may adversely affect the defendant's ability to hold certain professional licenses and may impair the defendant's ability to do business with federal, state, and local governments or to receive benefits from such governments.

There may be other adverse consequences as well, some of them unforeseeable.  It may be difficult or impossible to predict all of the adverse consequences of the defendant's guilty plea.  The defendant agrees that any resulting adverse consequences, whether or not foreseen or foreseeable, will not provide a basis for withdrawing from the guilty plea described in this agreement or otherwise challenging the resulting conviction and sentence.

G.  **Restitution:** Independent of any agreement to pay restitution, and whether there is any such agreement, the sentencing Court may be required to order that the defendant pay restitution to any victim of the offense(s) of conviction under the Mandatory Victim Restitution Act, 18 U.S.C. § 3663A.  In addition, the sentencing Court may have the authority to order that the defendant pay restitution to any victim of the offense(s) of conviction pursuant to 18 U.S.C. §§ 3663 & 3664.  In any case involving a conviction for a sexual exploitation offense in chapter 110 of title 18 of the United States Code, the Court must order restitution for the full amount of the victim's losses as determined by the court.  The victim's losses include, but are not limited to medical services related to physical, psychiatric, or psychological care; physical or occupational therapy or rehabilitation; necessary transportation, temporary housing, and child care expenses; lost income; attorney's fees and other costs; and any other losses suffered by

the victim as a proximate result of the offense.  The restitution payment will be in addition to any other civil or criminal penalty authorized by law.

H. **Forfeiture:** If the defendant has agreed to forfeiture of assets, the defendant agrees to the following terms and conditions:

   a.   The defendant hereby forfeits, to the United States, all right, title, and interest of any nature in any and all assets that are subject to forfeiture, including substitute assets, as set forth above, whether those assets are in the possession or control of the defendant, a nominee, or some other third party.

   b.  The defendant consents to the entry of an order of forfeiture of the assets described above.

   c.  The defendant is aware that pursuant to Rule 32.2(b)(4)(A) of the Federal Rules of Criminal Procedure, a preliminary order of forfeiture becomes final as to a given defendant at sentencing or at any time before sentencing if the defendant consents.  The defendant consents that the preliminary order of forfeiture in this case shall become final as to the defendant before sentencing, as of the date the preliminary order of forfeiture is entered by the Court.  The defendant understands that the government, upon entry of the preliminary order of forfeiture, will address any potential third party claims pursuant to Rule 32.2(c), and seek to finalize forfeiture.

   d.  Forfeiture of the defendant's assets will not satisfy all, or any portion of, a fine, restitution, or other monetary penalty that the Court may impose upon the defendant in addition to forfeiture.  Satisfaction of all, or any portion of, any restitution, fine, or other penalty that the Court may impose upon the defendant in addition to forfeiture will not satisfy all, or any portion of, any forfeiture judgment ordered by the Court.

e.  In the event that any successful claim is made, by any third party, to the assets described above, the defendant agrees to forfeit substitute assets equal in value to the assets transferred to any such third party. The defendant agrees that forfeiture of substitute assets shall not be deemed an alteration of the Defendant's sentence.

f.  The defendant agrees to cooperate with the United States by taking whatever steps are necessary to pass clear title to the United States of any forfeitable assets, including but not limited to, surrendering title; completing any documents or legal proceedings required to transfer assets to the United States; and taking necessary steps to ensure that assets subject to forfeiture are not sold, disbursed, expended, destroyed, damaged, hidden or otherwise made unavailable for forfeiture or removed beyond the jurisdiction of the Court.

g.  The defendant waives the right to a jury trial on the forfeiture of assets. The defendant waives all constitutional, legal, and equitable defenses to the forfeiture of assets, as provided by this agreement, in any proceeding, including but not limited to any jeopardy defense or claim of double jeopardy or any claim or defense under the Eighth Amendment to the United States Constitution, including any claim of an excessive fine.

h.  The defendant acknowledges that the government may institute civil or administrative proceedings against any or all of the defendant's forfeitable assets, including, but not limited to substitute assets and any forfeitable assets not identified by the defendant, and agrees not to contest any such forfeiture proceedings.

i.  The defendant represents and warrants that the defendant has no direct or indirect interest in any property, real or personal, or other asset subject to forfeiture by virtue of this plea agreement, other than those listed above.

j.  In the event the government determines that the defendant has breached any condition of this plea agreement, none of the forfeited property shall be returned to the defendant, nor shall the defendant assert any claim to the forfeited property.  The defendant shall not reacquire any forfeited property, directly or indirectly, through family members, nominees, friends, or associates.

**I.  Determination of Financial Condition and Payment of Interest and Penalties:**

a.  In order to facilitate the collection of financial obligations to be imposed in connection with this prosecution, the defendant agrees fully to disclose all assets in which the defendant has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party.

b.  The defendant will promptly submit a complete, accurate, and truthful financial statement to the United States Attorney's Office, in a form it provides and as it directs.

c.  The defendant authorizes the United States Attorney's Office to obtain a credit report on the defendant in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

d.  Interest and penalties may accrue, as a matter of law, on any unpaid financial obligation imposed as part of the defendant's sentence, from as early as the date of sentencing.

**J.  Remedies for Breach:**

a.  Should the government determine that the defendant, after the date the defendant has signed this plea agreement, (i) has committed any further crime or violated any condition of release or supervision imposed by the Court (whether or not charged); (ii) has given false, incomplete, or misleading testimony or information; or (iii) has moved to withdraw the defendant's guilty plea for reasons other than those described in this agreement or

otherwise has breached any term or condition of this plea agreement or supplemental agreements with the government, the government will have the right, in its sole discretion, to void this agreement, in whole or in part. In the event of such breach, the defendant will remain obligated to plead guilty and otherwise comply with the terms of this agreement and will not be permitted to withdraw the defendant's guilty plea under this agreement. The defendant will be subject to prosecution for any federal criminal violation of which the government has knowledge, including but not limited to charges that this Office has agreed to dismiss or not to prosecute under this agreement.

b.  If the defendant breaches this agreement, the government will have the following remedies, among others, available to it:

    i.  To bring prosecution for any federal criminal offenses dismissed or not prosecuted under this agreement. The defendant waives (gives up) any defense or objection to the commencement of any such prosecution that is not time-barred by the applicable statute of limitations as of the date on which the defendant signed this plea agreement, notwithstanding the expiration of the statute of limitations between the signing of the agreement and the commencement of any such prosecution.

    ii.  In connection with any such prosecution, any information, statement, and testimony provided by the defendant, and all leads derived therefrom, may be used against the defendant, without limitation and without regard to any rights the defendant may have under Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410.

    iii. To utilize any information, statement, or testimony provided by the defendant in any proceeding, including at sentencing, notwithstanding U.S.S.G. §1B1.8;

    iv. To advocate if, and how, any particular adjustment or specific offense characteristic affects the applicable Sentencing Guidelines range without regard to any contrary stipulations contained in this agreement;

    v. To refrain from making any sentencing-related motion favorable to the defendant without regard to any provision in this agreement obligating the government to consider making or make such motion upon fulfillment of certain conditions;

    vi. To urge the sentencing Court to take the defendant's breach into account when imposing sentence;

    vii. To recommend any sentence the government deems appropriate, even if such recommendation is at odds with any stipulation in this agreement.

K. **Limitations:** This agreement is between the United States Attorney's Office for the Northern District of New York and the defendant. References to "the government" in this agreement refer only to that Office. This agreement does not bind any other federal, state, or local prosecuting authorities. Furthermore, this agreement does not prohibit the United States, any agency thereof, or any third party from initiating or prosecuting any civil or administrative proceedings directly or indirectly involving the defendant, including, but not limited to, proceedings by the Internal Revenue Service relating to potential civil tax liability, proceedings relating to the forfeiture of assets, and proceedings by the Department of Homeland Security, Bureau of Citizenship and Immigration Services relating to the immigration status of the defendant.

L. **Agreement Must be Signed; Modifications Must be Written or on the Record:** This agreement, to become effective, must be signed by all of the parties listed below. No promises, agreements, terms, or conditions other than those set forth in this plea agreement will be

effective unless memorialized in writing and signed by all parties or confirmed on the record before the Court.

M. **Agreement to Plead Guilty Voluntary:** The defendant acknowledges reading each of the provisions of this plea agreement with the assistance of counsel and understands its provisions. The defendant further acknowledges that the defendant's agreement to plead guilty is voluntary and did not result from any force, threat, or promises (other than the promises in this plea agreement and any written supplemental agreements or amendments).

GRANT C. JAQUITH
Acting United States Attorney

_____          11/22/2017
Miroslav Lovric                          Date
Assistant United States Attorney
Bar Roll No. 301490


_____          11/22/17
JESSICA CRANDALL                         Date
Defendant

_____          11/22/17
Kimberly M. Zimmer                       Date
Attorney for Defendant
Bar Roll No. 505346