UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

**UNITED STATES OF AMERICA,**

v.

**JESSICA CRANDALL,**                                   3:17-CR-00063 (TJM)

Defendant.

### <u>DEFENDANT JESSICA CRANDALL'S SENTENCING MEMORANDUM<br>AND MOTION FOR A NON-GUIDELINE SENTENCE</u>

Jessica Crandall, by and through her attorney, Kimberly M. Zimmer, respectfully submits

this Sentencing Memorandum in connection with her Sentencing currently scheduled for July 25,

2018.  It is respectfully requested that the Court, in the exercise of its discretion, and in

consideration of the provisions of 18 U.S.C. §3553(a), impose the lowest possible term of

imprisonment allowed by law, which in this case is fifteen years of imprisonment.

### <u>INTRODUCTION</u>

On October 27, 2017, Jessica Crandall appeared before Your Honor and entered a guilty

plea to Counts One and Five of a Seven-Count Indictment that charged her with Conspiracy to

Sexually Exploit a Child in violation of 18 U.S.C. §2251(a) and (e) and Sexual Exploitation of a

Child in violation of 18 U.S.C. §2251(a) and (e), respectively.  Later, on November 22, 2017,

Ms. Crandall pled guilty to Counts One, Two, and Five of the Indictment, pursuant to a written

plea agreement, with the expectation that the remaining counts against her will be dismissed at

sentencing.  *See* Presentence Investigation Report dated July 10, 2018 ("PSR") at ¶1.

Ms. Crandall was arrested on these charges on February 17, 2017, and following her

initial appearance waived her right to a detention hearing.  *See* PSR at ¶7.  Ms. Crandall has

remained in custody since that time and because she is in primary state custody it remains unclear where she will serve her time or whether the Federal Bureau of Prisons will credit her for the time she has served since February 17, 2017.

### THE ADVISORY SENTENCING GUIDELINE CALCULATION

As part of her Plea Agreement, Jessica Crandall stipulated to the Sentencing Guideline calculation contained in the PSR, which ultimately resulted in a total offense level of 43. *See* PSR at ¶68. Therefore, with a Criminal History Category III, Ms. Crandall's ***advisory*** sentencing guidelines sentence is life. *See* PSR at ¶103. Because the statutory maximum sentence authorized by law is 30 years for each count of conviction, Ms. Crandall's ***advisory*** sentencing guidelines sentence is 90 years. *See id.*

Although the Court is required to consider the ***advisory*** sentencing guideline and it is expected that the Government will, as it always does, recommend that Ms. Crandall be sentenced to the ***advisory*** guideline sentence, for many reasons, the ***advisory*** sentencing guideline is not an indication of a *reasonable* or *just* sentence for Ms. Crandall. In a series of cases involving the child pornography guidelines, the Second Circuit has cautioned district courts not to "presume that a Guidelines sentence is reasonable for any particular defendant." *United States v. Dorvee*, 616 F. 3d. 174, 182 (2d Cir. 2010); *see also United States v. Chow*, 441 Fed.Appx. 44, 2011 WL 5829616 (2d Cir. 2011) ("*Dorvee* recognizes district courts' post-Booker authority to 'vary from the Guidelines range based solely on a policy disagreement with the Guidelines,' and encourages courts to take seriously that discretion 'in fashioning sentences under §2G2.2' for child pornography defendants."); *United States v. Perez-Frias*, 636 F.3d 39, 43 (2d Cir. 2011) ("We criticized the child pornography Guideline in *Dorvee* because Congress ignored the Commission and directly amended the Guideline, which had the effect of 'eviscerat[ing] the fundamental

statutory requirement in §3553(a) that district courts consider 'the nature and circumstances of

the offense and the history and characteristics of the defendant.'")

While *Dorvee* and its progeny specifically discuss the "irrationality in §2G2.2," which is

not the Sentencing Guideline section at issue here, much of the reasoning in *Dorvee* remains

instructive.  Specifically, many of the guideline enhancements in U.S.S.G. §2G2.1, like those in

U.S.S.G. §2G2.2, are "all-but-inherent" in the offense conduct.  *See United States v. Jenkins*, 854

F. 3d 181, 188-190 (2d Cir. 2017).  Like the child pornography sentencing guidelines in 2G2.2,

the U.S.S.G. §2G2.1 enhancements inflate the advisory sentencing guideline range at every turn

and often unfairly so.

More importantly, in *Dorvee*, the Second Circuit also reminded district courts of its duty

under §3553(a)'s "parsimony clause":

> to "impose a sentence sufficient, but not greater than necessary to
> comply with the specific purposes set forth" at 18 U.S.C. §
> 3553(a)(2).  *United States v. Samas,* 561 F.3d 108, 110 (2d
> Cir.2009). In applying § 3553(a) and its parsimony clause, the
> court must look to "the nature and circumstances of the offense
> and the history and characteristics of the defendant," 18 U.S.C. §
> 3553(a)(1), "the need to avoid unwarranted sentence disparities
> among defendants with similar records who have been found guilty
> of similar conduct," 18 U.S.C. § 3553(a)(6), and the Guidelines
> themselves, 18 U.S.C. § 3553(a)(5). In conducting this review, a
> district court needs to be mindful of the fact that it is "emphatically
> clear" that the "Guidelines are guidelines-that is, they are truly
> advisory." *Cavera,* 550 F.3d at 189.; *Id.* at 183.

Recently, in *United States v. Jenkins*, 854 F. 3d 181, 188-190 (2d Cir. 2017), the Second

Circuit reiterated its holdings in *Dorvee* and emphasized *Dorvee*'s central holding that district

courts are required to conduct an independent, thorough, and individualized analysis of the

§3553(a) sentencing factors and that such analysis should not be undermined or countermanded

by consideration of the Sentencing Guidelines. *Jenkins*, 854 F. 3d at 188-190.  In *Jenkins*, the

Second Circuit found the sentencing in a child pornography case "shockingly high," and stated that such sentences are "ones that serve no valid public purpose." *Id.* at 187, *citing United States v. McGinn*, 787 F. 3d 116, 129 (2d Cir. 2015).

## MOTION FOR NON-GUIDELINE SENTENCE

It is respectfully submitted that a "fair and just" sentence for Jessica Crandall and one that is "sufficient, but not greater than necessary, to comply with the basic aims of sentencing" is the statutory mandatory minimum sentence of fifteen years imprisonment.  The sentencing factors in 18 U.S.C. §3553, as they apply to Jessica Crandall, demonstrate that a sentence greater than fifteen years imprisonment is much more than is required to meet the basic aims of sentencing and would be substantively unreasonable.

**I.**     **Section 3553(a) (1) – Nature and Circumstances of the Offense and History and Characteristics of the Defendant**

### A.  Nature and Circumstances of the Offense

The offense conduct, which is not disputed, is set forth in the PSR.

Jessica Crandall has accepted full responsibility for her conduct.   While Jessica Crandall was Justin Crandall's co-conspirator, she was not aware of the full scope of Justin Crandall's conduct and she did not participate in all of the conduct alleged in the Indictment.  Although Jessica Crandall can be seen on two of the video recordings the Government produced during discovery and Justin Crandall can be heard calling out to or speaking to Jessica Crandall in two other videos, it does not appear that she can see what Justin Crandall is doing or is even in the same room.  The Government's discovery materials also show that Jessica Crandall did not have any video images of the child on her phone and did not distribute any sexually explicit images of the child as the Indictment alleges against Justin Crandall.  Jessica Crandall did not know that Justin Crandall was sending images to another individual nor did she know who that person was.

4

In fact, Jessica Crandall first learned of Justin Crandall's conduct approximately two to three weeks before her arrest on February 13, 2017.

It cannot be disputed that Justin Crandall was the instigator of the conduct alleged in the Indictment. Even though Jessica Crandall was a participant in *some* of the conduct alleged in the Indictment, she is clearly less culpable than Justin Crandall. And, while the offense conduct that Jessica Crandall participated in or knew about can never be justified or excused, she accepts full responsibility for that conduct, including her inability to stand up to Justin Crandall and not abide his requests. The fact remains, however, that Jessica Crandall would not have engaged in any of the conduct alleged in the Indictment but for her relationship with Justin Crandall.

### B. History and Characteristics of Jessica Crandall

Jessica Crandall will be 29 years old on November 10, 2018, and she has known Justin Crandall since she was just 15 years old. Their relationship was volatile and unstable from the inception, marked by drug abuse and periods of incarceration. *See* PSR ¶82. Throughout their relationship, Justin Crandall has been physically and emotionally abusive and extremely controlling. Justin Crandall has stalked Jessica Crandall, used a phone tracking device to keep track of her every move, and, on one occasion even hid in her closet, waited for her to fall asleep, then began choking her – only agreeing to leave after she agreed to have sex with him. Jessica Crandall believed that "the only control I had with him was if he got what he wanted – if I didn't agree, he'd just take it." *See* Addendum B to the PSR, containing the Report of Norman J. Lesswing, Ph.D. dated January 29, 2018 ("Lesswing Report").

Jessica Crandall's youth was lonely and unstable. When she was very young, she lived with both of her parents, who were married at the time. Jessica's father was an alcoholic and abusive to both her and her mother, once going so far as to pull out a shotgun when Jessica's

mother threatened to leave him. *id.* Jessica Crandall's parents split up a number of times, ultimately for good when Jessica was about 8 years old. After her parents divorced, she had weekend visitation with her father, and although she was afraid of him, she went on those visitations because "that was what she was supposed to do" and that it was "easier to go along." *See id.* A shy, introverted child, Ms. Crandall sought to not draw attention to herself, or "make waves," and instead avoided confrontation and tried to please everyone around her.

As the PSR, the Lesswing Report, and the conduct itself all make clear, Jessica Crandall's entire life has been marked by abuse and instability. Having come from a broken home herself, Jessica Crandall wanted her children, who mean the world to her, to have an intact family. Like many parents, she wanted to give her children the life she herself never had. Justin Crandall knew this and used their children as a way to control Jessica Crandall, often threatening her that he would take them away from her and she would never see them again.

The PSR accurately sets forth additional details regarding Jessica's background, family, and other personal circumstances.

## II.     Section 3553 (a) (2) Factors

Section 3553(a)(2) mandates that sentencing courts consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

As part of her Plea Agreement, Jessica Crandall stipulated to a number of sentencing guideline enhancements that are technically applicable. She is not, however, a "repeat and

dangerous sex offender against minors" as application of U.S.S.G. § 4B1.5(b) seems to suggest. Indeed, it is clear that Jessica Crandall would never have engaged in such conduct had she not met Justin Crandall and that there is no likelihood or risk that she will ever engage in such behavior again. Jessica Crandall's full and complete acceptance of responsibility for her conduct provides the Court with assurance that the public does not need to be protected from further crimes by her and that she will not reoffend.

Sentencing Jessica Crandall, who is now 28 years old, to fifteen years imprisonment satisfies the goals of general and specific deterrence and is, by any measure, punishment. For Jessica Crandall it means that she will lose all of her 30's and will be more than forty years old before she will be able to resume her life. Then, as the Court knows, she will be placed on supervised release where her activities will be closely monitored.

In dicta in *Jenkins*, the Second Circuit stated:

> Additional months in prison are not simply numbers. Those months are exceptionally severe consequences for the incarcerated individual. They also have consequences both for society which bears the direct and indirect costs of incarceration and for the administration of justice which must be at its best when, as here, the stakes are at their highest. *Jenkins*, 854 F. 3d at 193.

These words merit consideration in all cases where lengthy prison sentences are contemplated. Fifteen years incarcerated, separated from loved ones, is a very long time and that such a sentence is referred to as the statutory mandatory minimum does not change that fact.

Simply put, a sentence of more than fifteen years imprisonment for Jessica Crandall does not further or serve any §3553(a) sentencing goals.

7

III.     **Section 3553(a)(3) Kinds of Sentences Available**

The PSR sets forth the sentencing options available to the Court.

IV.     **Section 3553(a)(4) and (a)(5)–Advisory Guideline Range and Policy Statements**

The ***advisory*** sentencing guidelines are ***but one of several factors*** in Section 3553(a), and are not an indication by themselves of a *reasonable* or *just* sentence.

V.     **Section 3553 (a) (6) – Sentencing Disparities**

Sentencing disparity is not an issue in this case.

VI.     **Section 3553 (a) (7) -- Restitution**

Restitution is not required in this case.  *See* PSR ¶116.

## CONCLUSION

It is respectfully requested that the Court sentence Jessica Crandall to the statutory mandatory minimum sentence of 15 years imprisonment. Jessica Crandall's conduct and participation in the abuse that Justin Crandall directed was clearly wrong. It has already cost her what matters most to be involved in the lives of her three children, each of whom she loves dearly. For at least as long as she is incarcerated, she will continue to be separated from them and when that incarceration is complete and she on supervised release, she will have the daunting task of starting her life over.

For all of these reasons, it is respectfully submitted that the Court sentence Jessica Crandall to fifteen years imprisonment.

Respectfully submitted,

Dated:  July 12, 2018

 /s/ Kimberly M. Zimmer
**KIMBERLY M. ZIMMER**
Zimmer Law Office, PLLC
120 E. Washington Street, Suite 815
Syracuse, New York 13202
Bar Roll No.: 505346
(315) 422-9909

9